IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2003 Session

## ALLIANCE FOR NATIVE AMERICAN INDIAN RIGHTS IN TENNESSEE, INC. ET AL. v. GERALD F. NICELY ET AL.

Appeal from the Chancery Court for Davidson County
No. 02-1267-II(I)    Irvin H. Kilcrease, Jr., Chancellor

No. M2002-02555-COA-R3-CV - Filed May 10, 2005

This appeal involves the effect of a highway improvement project on ancient Native American graves. After discovering the graves during construction, the Tennessee Department of Transportation filed petitions in the Chancery Courts for Williamson and Davidson Counties seeking permission to disinter the remains and reinter them in another location. Despite prevailing in protracted litigation with Native American organizations and individuals, the Department voluntarily dismissed both petitions after deciding to bury the remains in place, to encapsulate them in reinforced concrete, and to continue construction on top of the encapsulated graves. A Native American organization and several Native American individuals filed this suit in the Chancery Court for Davidson County asserting that the Department's actions violated their equal protection and due process rights under the Fourteenth Amendment to the United States Constitution. The trial court dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted, and the Native American parties appealed. Construction continued while the appeal was pending because the Native American parties failed to request the trial court or this court to stay the construction during the appeal. Before oral argument in this appeal, the Department completed the construction project, including the reinterment of the remains and encapsulation of the graves in concrete. In light of these later developments, we have determined that this appeal is now moot and should be dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Joseph H. Johnston, Nashville, Tennessee, for the appellants, Alliance for Native American Indian Rights in Tennessee, Inc., Patrick Cummins, Sandi Perry, Toye Heape, and Marion Dunn.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and John H. Sinclair, Jr., Assistant Attorney General, for the appellees, Gerald F. Nicely, Commissioner of the Tennessee Department of Transportation, and the State of Tennessee.

**OPINION**

**I.**

In the mid-1990s, the Department of Transportation decided to widen and improve Hillsboro Road because of increased traffic. In January 1999, after construction had commenced near the intersection of Hillsboro Road and Old Hickory Boulevard, the Department's archeological crew discovered two unmarked ancient Native American graves on a portion of the project located in Williamson County. Four months later, a third ancient Native American grave was discovered on a portion of the project in Davidson County.

After its engineers determined that the planned construction would disturb all three grave sites, the Department filed petitions in the Chancery Courts of Williamson and Davidson Counties seeking judicial approval to disinter the remains and reinter them in another location.[1] At this point, the Tennessee Commission on Indian Affairs and sixteen Native American individuals sought permission to join the Williamson County lawsuit as "interested persons."[2] The Chancery Court for Williamson County granted the Commission and the Native American individuals "interested person" status notwithstanding their concessions that they had no ownership interest in the property and that they could not prove any blood relationship to the persons whose remains had been discovered. This court thereafter granted the Department's Tenn. R. App. P. 10 application for an extraordinary appeal to review the Chancery Court for Williamson County's decision to grant "interested person" status to the Commission and the Native American individuals, as well as other procedural decisions the court had made.

The proceeding in the Chancery Court for Davidson County slowed after this court granted the Department's Tenn. R. App. P. 10 application in the Williamson County proceeding. By that time, the Alliance for Native American Indian Rights of Tennessee ("ANAIRT") and three Native American individuals had moved to join the Davidson County lawsuit as "interested persons" on the strength of the Williamson County chancellor's decision. Shortly after we granted the Department's Tenn. R. App. P. 10 application, these same Native American parties filed a counter-petition in the Davidson County proceeding asserting that the Department's proposed relocation of the Native American remains would violate their rights of conscience and free exercise of religion under the First Amendment to the United States Constitution and Article I, § 3 of the Tennessee Constitution and their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment

---

[1]These petitions were filed under Tenn. Code Ann. §§ 46-4-101 to -104 (2000) which authorizes the filing of suits in chancery court to terminate the use of land as a cemetery and the disinterment and reinterment of the human remains in another location.

[2]Tenn. Code Ann. § 46-4-102 defines "interested persons" as:

any and all persons who have any right or easement or other right in, or incident or appurtenant to, a burial ground as such, including the surviving spouse and children, or if no surviving spouse or children, the nearest relative or relatives by consanguinity of any one (1) or more deceased persons whose remains are buried in any burial ground.

to the United States Constitution. The Davidson County chancellor decided to postpone acting on the Department's motion to dismiss the counter-petition pending the outcome of the Commission's extraordinary appeal from the Williamson County chancellor's decision.

In 2001, this court held that the Williamson County chancellor had erred by granting the Tennessee Commission on Indian Affairs and the sixteen Native American individuals "interested person" status with regard to the Department's petition to relocate the Native American remains. We also held that neither the denial of "interested person" status nor the relocation of the Native American remains violated the rights of conscience or free exercise of religion protected by the First Amendment to the United States Constitution or Article I, § 3 of the Tennessee Constitution. However, we pointed out that the trial court could, in its discretion, permit the Native American parties to participate in the case as amici curiae. *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 757-67 (Tenn. Ct. App. 2001).

The Department renewed its motion to dismiss the Native American parties' counter-petition in the Davidson County proceeding after the Tennessee Supreme Court declined to review this court's opinion in the Williamson County proceeding. In March 2002, the Davidson County chancellor dismissed the Native American parties' counter-petition in its entirety, although it permitted the Native American parties to continue to participate in the Davidson County proceeding as amici curiae.

Nine days after the entry of the Davidson County chancellor's order, the Department filed a notice under Tenn. R. Civ. P. 41.01 that it was voluntarily dismissing its petition.[3] The Department took this step because it had decided not to disinter and relocate the Native American remains, but rather to reinter them in place and encapsulate the graves in reinforced concrete. The Department believed that this course of action would assuage the Native Americans' concerns about disturbing the graves. On April 1, 2002, the Davidson County chancellor dismissed the Department's petition.[4]

Later in April 2002, ANAIRT and four Native American individuals filed a 42 U.S.C. § 1983 lawsuit against the Commissioner of Transportation[5] in the Chancery Court for Davidson County asserting that the Department's plans to reinter the Native American remains violated their rights under the Due Process and Equal Protection Clauses of the United States Constitution. While the Native American parties did not request damages, they requested the court to issue a temporary

---

[3]Although the record on appeal is silent regarding the date, at some point, the Department filed a similar notice of voluntary dismissal in the Williamson County proceeding.

[4]This court affirmed the Davidson County chancellor's decision to deny the Native American parties' petition to intervene as "interested parties," as well as its decision to permit the Department to voluntarily dismiss its petition. *State ex. rel. Comm'r of Dep't of Transp. v. Any and All Parties with an Interest in Property Identified as Tax Map 158, Parcel 34*, No. M2002-01137-COA-R3-CV, 2003 WL 21439038 (Tenn. Ct. App. June 23. 2003), *perm. app. denied* (Tenn. Dec. 22, 2003) (Not for Citation).

[5]In accordance with Tenn. R. App. P 19(c), Commissioner Gerald F. Nicely has been substituted as a party defendant in the place of former Commissioner J. Bruce Saltsman.

injunction preventing the Department from encapsulating and paving over the remains and a permanent injunction preventing the disinterment of the remains.[6]

In May 2002, the Davidson County chancellor denied the Native American parties' petition for a preliminary injunction. Several months later, the court dismissed their lawsuit as well. The court held that the Native American parties lacked standing to bring the action and that they had failed to allege a legally cognizable violation of their due process and equal protection rights. While the Native American parties filed a timely notice of appeal, they did not request the trial court or this court to stay construction of the project pending the outcome of this appeal. Accordingly, before the appellate briefs had even been prepared, the Department reinterred the remains, encapsulated the graves in reinforced concrete, and continued the improvements to Hillsboro Road over the top of the encapsulated graves. In January 2003, the Department completed the disputed construction project.

## II.

Before we can reach the merits of the Native American parties' constitutional claims, we must first resolve a threshold jurisdictional issue. The requirements for litigation to continue are essentially the same as the requirements for litigation to begin. *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001 WL 72342, at *5 (Tenn. Ct. App. Jan. 30, 2001) (No Tenn. R. App. P. 11 application filed). A case must remain justiciable through the entire course of litigation, including any appeal. *State v. Ely*, 48 S.W.3d 710, 716 n.3 (Tenn. 2001); *Cashion v. Robertson*, 955 S.W.2d 60, 62-63 (Tenn. Ct. App. 1997). A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Co.*, 18 S.W.3d 186, 193 (Tenn. 2000); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998).

A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *McCanless v. Klein*, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d at 616. Determining whether a case is moot is a question of law. *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n*, 2001 WL 72342, at *5; *Orlando Residence, Ltd. v. Nashville Lodging Co.*, No. M1999-00943-COA-R3-CV, 1999 WL 1040544, at *3 (Tenn. Ct. App. Nov. 17, 1999) (No Tenn. R. App. P. 11 application filed). Where a case on appeal is determined to be moot and does not fit into one of the recognized exceptions to the mootness doctrine, the appellate court will ordinarily vacate the judgment below and remand the case to the trial court with directions that it be dismissed. *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d at 617; *McIntyre v. Traughber*, 884 S.W.2d 134, 138 (Tenn. Ct. App. 1994). However, if

---

[6]The Native American parties clearly recognized that their claims might become moot once the remains were encapsulated and paved over. They noted in their petition for a preliminary injunction that if an injunction was not forthcoming, "the issue . . . of this unusually callous treatment of Native American Indian grave sites by the Defendants may become moot."

the case falls within one of the recognized exceptions to the mootness doctrine, the appellate court has the discretion to reach the merits of the appeal in spite of the fact that the case has become moot.

After the Native American parties filed their notice of appeal, but several months before the briefs on appeal were prepared, the Department completed the construction project that the Native American parties had sought to halt by the filing of this lawsuit. The Native American parties acknowledged during oral argument that the project had been completed and that the remains at issue had been reinterred, encapsulated in concrete, and paved over – the very acts they had sought to prevent. It is well established that a suit brought to enjoin a particular act becomes moot once the act sought to be enjoined takes place. *Miller v. Miller*, No. M2002-02775-COA-R3-CV, 2003 WL 22994305, at *4 (Tenn. Ct. App. Dec. 17, 2003) (No Tenn. R. App. P. 11 application filed) (citing *Badgett v. Broome*, 219 Tenn. 264, 268, 409 S.W.2d 354, 356 (1966); *Malone v. Peay*, 157 Tenn. 429, 433, 7 S.W.2d 40, 41 (1928)).

The primary relief sought by the Native American parties was injunctive relief. While they also requested declaratory relief and attorney's fees, these requests were merely incidental to the primary relief they sought. Requests for incidental relief of this nature are insufficient to render a case justiciable if it is otherwise moot. *LaRouche v. Crowell*, 709 S.W.2d 585, 587 (Tenn. Ct. App. 1985) (request for declaratory judgment); *McIntyre v. Traughber*, 884 S.W.2d at 138 (request for attorneys' fees); *see also Carson v. DaimlerChrysler Corp.*, No. W2001-03088-COA-R3-CV, 2003 WL 1618076, at *4 (Tenn. Ct. App. Mar. 19, 2003) (No Tenn. R. App. P. 11 application filed) (request for prejudgment interest). Accordingly, this case has become moot, and the only remaining question on appeal is whether it fits within one of the established exceptions to the mootness doctrine.

### III.

The Native American parties conceded at oral argument that the courts could not provide them with the relief they sought with regard to the three graves discovered near the intersection of Hillsboro Road and Old Hickory Boulevard. Nevertheless, they insisted during oral argument that this court should reach the merits of their constitutional claims because the Department's actions in this case are capable of repetition and that these actions, if repeated, will evade judicial review. While Tennessee courts recognize the "capable of repetition yet evading review" exception to the mootness doctrine, *State ex rel. McCormick v. Burson*, 894 S.W.2d 739, 742 (Tenn. Ct. App. 1994), we have determined that it is not applicable to this case.

The courts invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases. Parties requesting a court to invoke the exception must demonstrate (1) a reasonable expectation that the official acts that provoked the litigation will occur again,[7] (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it

---

[7] 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.8, at 370-71 (2d ed. 1984).

reoccurs.[8]  A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception.  Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 1184 (1982); 1 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 2.13, at 37 (3d ed. Supp. 2005).

The Native American parties assert that the court should invoke the "capable of repetition yet evading review" exception because the Department has adopted a policy designed to avoid judicial entanglements whenever it encounters ancient Native American remains.  Based on the Department's voluntary dismissal of its Tenn. Code Ann. § 46-4-103 petitions regarding this project, they assert that the Department has decided to discontinue seeking judicial authorization to remove and reinter Native American remains when discovered during construction and to simply reinter the remains in place, encapsulate them in concrete, and then continue construction.  We find no evidentiary foundation for these assertions.

The Department has repeatedly emphasized that its actions in this case were based on its mistaken belief that reinterring the remains and encapsulating them in concrete would fully alleviate the Tennessee Native American community's concerns regarding the treatment of their potential ancestors' remains.  This litigation has put the Department on notice, as its lawyer conceded during oral argument, that reinterring the remains and encapsulating them in concrete does not fully alleviate the concerns of many members of the Native American community.[9]  Accordingly, the Department now has a clearer, more accurate understanding of the Tennessee Native American community's reaction to this practice.

In addition, the Department repeatedly conceded during oral argument that it understood that it could not avoid filing a Tenn. Code Ann. § 46-4-103 petition by simply reinterring remains and encapsulating them in cement.  This court specifically questioned the Department's lawyer about the Department's official position with regard to filing a Tenn. Code Ann. § 46-4-103 petition in circumstances similar to those encountered during the construction of the improvements at the intersection of Hillsboro Road and Old Hickory Boulevard.  The Department's lawyer expressly and

---

[8]*City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S. Ct. 1660, 1669 (1983); *Gannett Co. v. DePasquale*, 443 U.S. 368, 377, 99 S. Ct. 2898, 2904 (1979); *State v. Montgomery*, 929 S.W.2d 409, 414 (Tenn. Crim. App. 1996).

[9]The Native American parties in this case have acknowledged the differences of opinion among Native Americans regarding the appropriate course of action to take when Native American remains are discovered during the course of a construction project.  Their motion to consider post-judgment facts states:

> Native American Indians view the disturbance of the remains of the dead as tremendously more inconsistent with due and proper reverence for their memory than . . . the existence of nearby buildings.  Some Southeastern Indian Nations indigenous to Middle Tennessee, such as the Eastern Band of Cherokee, and the Chickasaw Nation, have even expressed a preference for leaving the remains intact and in place, with roads being constructed over them, rather than moving the remains to another location.  (The Townsend site in East Tennessee and the Kelly site in Davidson County.)

repeatedly conceded that the Department would be required to file a Tenn. Code Ann. § 46-4-103 petition in future cases.[10]

The answers of the Department's lawyer at oral argument are consistent with our understanding of the application of the statutes governing the termination of the use of real property as a cemetery. These statutes require court approval not only for the disinterment and reburial of remains, but also to "terminate the use of, and all rights and easements to use, . . . ground as a burial ground, and all rights and easements incident or appurtenant to the ground as a burial ground." Tenn. Code Ann. § 46-4-103(a)(2). It would seem ill-advised, to say the least, for the Department to construct costly improvements on land known to contain human graves without first seeking an order terminating the legal rights incident to those graves. Such a policy would leave the Department and the State open to the risk that individuals related to the persons buried in the graves would someday demand the destruction or reconfiguration of the improvements to allow them access to the graves or to remove the remains and give them a proper reburial.

In short, we credit the Department's representations at oral argument (1) that it has no policy requiring or even favoring reburial in place, encapsulation, and paving over of Native American remains discovered in the course of construction projects and (2) that it would first seek court approval under Tenn. Code Ann. § 46-4-103 before pursuing such a course of action with respect to a specific project in the future. Based on these assertions, we have concluded that the Native American parties' anticipation of the Department's actions in the future is, at best, speculative.

Important constitutional issues such as the ones raised by the Native American parties should be left for determination in a case that presents an actual, ongoing controversy. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 157, 104 S. Ct. 2267,

---

[10]Consider, for example, the following exchange between Judge Cottrell and the Department's lawyer:

Judge Cottrell:   So are you saying that if in fact the state decided with regard to a cemetery . . . to just pave it over and not go through the disinterment they wouldn't have to notify anybody, because the . . . disinterment statute would not apply?

Answer:   No, it would apply.

To ensure that the Department's lawyer had correctly understood Judge Cottrell's question, Judge Koch followed up on the point in the following exchange:

Judge Koch:   The short . . . question is whether the statute we're referring to would also apply to paving over a cemetery, not just disinterring the bodies in there.

Answer:   Well, that's correct, your honor.

Later, the following exchange occurred:

Judge Koch:   But Judge Cottrell [is] asking you about the procedure in general, and the answer is, "yes, if we're going to pave over a cemetery, we have to follow the statutory procedures for notifying the property owners and relatives of those in the graves."

Judge Cottrell:   So it's not your position that the disinterment statute doesn't apply?

Answer:   No, your honor.

2279 (1984); *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002). There is presently no actual controversy between the parties regarding the subject matter of this litigation, and the Native American parties have not shown that there is a demonstrable probability that the same controversy involving the same parties will reoccur. Accordingly, this is not a proper case for invoking the "capable of repetition yet evading review" exception to the mootness doctrine.

## IV.

Throughout these proceedings, the Native American parties have made it clear that one of the rights they are seeking to vindicate is the right of Native Americans to play a meaningful role in the decision-making process when ancient human remains are discovered. While the Native American parties appear to believe that the courts provide the only access to this process, other federal and state statutes and regulations beyond Tenn. Code Ann. § 46-4-103 encourage and require Native American involvement in decisions regarding Native American remains and funerary objects.

For all the foregoing reasons, we conclude that this case is moot and does not fall under the "capable of repetition yet evading review" exception to the mootness doctrine. Accordingly, we vacate the order dismissing the Native American parties' petition for failure to state a claim for which relief can be granted and remand the case with directions to enter an order dismissing the petition as moot. We tax the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., P.J., M.S.